## (May 9, 1979)

■ In the Matter of DANIEL LADORE, Respondent, v MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF PORT CHESTER et al., Appellants.—In a proceeding, *inter alia,* to declare the validity of a certain absentee ballot and to declare petitioner to be the successful candidate in the general election held on April 24, 1979 for the public office of Trustee of the Village of Port Chester, the appeals are from a judgment of the Supreme Court, Westchester County, dated May 3, 1979, which granted the petition, ruled the absentee ballot to be valid and declared petitioner to be the successful candidate. Judgment affirmed, without costs or disbursements. As a result of the April 24, 1979 election held for the public office of Trustee of the Village of Port Chester (two positions were to be filled), 2,089 votes were cast for petitioner and 2,088 votes were cast in favor of appellant Joseph A. Guarino. Another candidate received substantially more votes than either petitioner or Guarino. On the evening of April 24, after the foregoing tally was reported, the appellant village clerk voided an absentee ballot which was in the petitioner's favor, thereby causing a tie vote for the second trustee position. Thereupon, the Board of Elections of Westchester County recanvassed the votes and confirmed the tie, noting that since its two

commissioners disagreed as to the validity of the one absentee ballot voided by the village clerk, said vote was not included in the 2,088 votes that they had found were cast in favor of the petitioner. On April 26, 1979, the same day that the Board of Elections confirmed, in writing, the results of its recanvass, notice was given to appellants that the petitioner would bring the instant proceeding. The petition annexed to the order to show cause was dated April 26, 1979 and was duly served. However, it was not verified as required by section 16-116 of the Election Law. It was merely acknowledged, which is technically insufficient (see *Matter of Leene v Williams,* 14 AD2d 665). However, under the circumstances of this case, we are of the opinion that the appellants, by their conduct, waived their right to object on this ground. The appellants, as evidenced by their answers, were aware of the lack of verification on April 28, 1979 (appellant Guarino) and April 30, 1979 (the village appellants). However, they made no mention of such fact on the return date of the order to show cause, April 30, 1979, at which time they protested lack of personal service. Instead, they waited until May 1, 1979, the day after petitioner could remedy this defect, before raising the issue. We believe that Special Term properly concluded that this delay, in a summary proceeding such as this, constituted a waiver. Pursuant to CPLR 3022, a party may treat an unverified pleading as a nullity "provided he gives notice *with due diligence* to the attorney of the adverse party that he elects so to do" (emphasis added). Due diligence has been variously interpreted as "immediately" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3022:2, p 396) and "within twenty-four hours" *(Matter of O'Neil v Kasler,* 53 AD2d 310, 315). Since appellants did not notify petitioner as to the lack of verification until they had served their answers, and did not raise such defect in their motions to dismiss, which were based upon the lack of personal jurisdiction, this objection has been waived (see CPLR 3211, subd [e]; *Matter of O'Neil v Kasler, supra).* Turning to the merits, in our opinion, the ballot in question was improperly voided. An examination of the absentee ballot shows that it was not prepared in conformity with section 7-122 of the Election Law. It did not contain a voting square within which the voter's "X" or "✓" mark could be inserted to indicate his choice of a candidate. Rather, the absentee ballot in question was a facsimile of a ballot as it would appear on a voting machine. Notwithstanding this defect, the instruction for the absentee ballot directed that the voter "make a single X or check ✓ mark in the voting square above the name of the candidate." The voter who cast this particular absentee ballot, in addition to placing an "X" over the two candidates of his choice, inserted a "1B" below the pre-printed number 1 in a *box* at the top of the ballot, indicating the position being voted on, and a "2B" under the pre-printed number 2. In our view, the "1B" and the "2B" were further indications or clarifications of the voter's choices and were occasioned by the voter's confusion due to the lack of voting squares. To declare the ballot invalid would be to penalize the voter for the error made by the election officials in not providing a proper absentee ballot (see *Matter of De Santis v Pedone,* 61 AD2d 1136, affd 45 NY2d 799). Rabin, J. P., Gulotta, Martuscello and Mangano, JJ., concur.

(May 11, 1979)

WESTCHESTER COUNTY CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., et