with a payment of $84,230 made by the defendant on June 16, 1982?

(3) Did the plaintiff ship any merchandise to defendant after February 23, 1983?

(4) Did the plaintiff correctly credit defendant's account for returned merchandise?

(5) Did the plaintiff double bill defendant for the same merchandise?

Over 35 years ago the Court of Appeals held, in *Sillman v Twentieth Century-Fox Film Corp.* (3 NY2d 395, 404 [1957]), that issue finding rather than issue determination is the key to determining motions for summary judgment. More recently, the Court of Appeals reiterated that principle in *Winegrad v New York Univ. Med. Center* (64 NY2d 851, 853 [1985]), when it stated that: "The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case * * * Failure to make such showing requires denial of the motion".

Accordingly, we modify Special Term's order to deny plaintiff's motion for summary judgment as to its first and third causes of action. Concur—Sullivan, J. P., Ross, Asch, Rosenberger and Wallach, JJ.

■ CARL F. GRILLO et al., Appellants, v JAMES F. NOTARO et al., Respondents.—Order, Supreme Court, New York County (David Edwards, Jr., J.), entered on March 12, 1986, affirmed, for the reasons stated by David Edwards, Jr., J., at Special Term, without costs and without disbursements. Concur—Sandler, Carro and Asch, JJ.

Kupferman, J. P., dissents in a memorandum as follows: The plaintiffs-appellants are duly elected members of the State Committee of the Liberal Party of the State of New York and bring this action against the Secretary and Chairman of the State Committee of that party, both individually and as such Committee officers. It is shown that a sufficient number of signatures have been filed to require a meeting of the State Committee and ask that notice of such meeting be required to be sent by the defendants to the members of the State Committee and further seek a Referee to act as parliamentarian and to supervise the conduct of such meeting *(see, Grillo v Harrington,* 65 NY2d 949).

The plaintiffs make it clear that their purpose in calling the meeting is to amend the party rules so that the officers of the

State Committee can be replaced prior to the end of their normal two-year term. The defendants have made it clear that they do not intend to call the meeting. All of this is part of an internecine struggle for control of the party and its machinery. *(See, e.g., Harding v Harrington,* 127 Misc 2d 5.)

My reading of *Prendergast v Gurevich* (11 NY2d 1082) indicates that the plaintiffs are correct in their approach. The defendants, however, argue that the 1962 *Prendergast* case has been modified by the 1976 amendment to Election Law § 2-116, which sets forth a method of removing an officer of a party committee. Among the reasons given for such removal is "disloyalty to the party", which, incidentally, is an allegation of the complaint. I do not see this section overruling the *Prendergast* case, but merely providing another method of removal.

While the defendants contend that removing party officers in midstream could create chaos in the system, which may very well be, there is no provision in law that requires an officer of a party committee to remain as such for a full term. It is only the party committeemen who have a fixed term. Moreover, democratic procedures for recall are an accepted political device.

The plaintiffs suggest that the political calendar requires that the meeting be called for the period between May 27th and June 3rd, and I would so direct. There is sufficient time for notice and preparation for a meeting.